UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. S1-4:16-cr-00466-JAR-SPM |
| | ) | |
| RUSSELL HIBBERT, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO FULLY OFFSET RUSSELL HIBBERT'S RESTITUTION BALANCE WITH THE LIQUIDATED FORFEITED ASSETS, THE FORFEITED CURRENCY, AND THE <u>RESTITUTION PAYMENTS</u>**

COMES NOW, the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Charles S. Birmingham and Kyle T. Bateman, Assistant United States Attorneys for said District, and responds in opposition to Defendant Russell Hibbert's *pro se* motion to fully offset Russell Hibbert's Restitution Balance with the Liquidated Forfeited Assets, the Forfeited Currency, and the Restitution Payments (the "Motion"). In support of its response, the United States respectfully submits the following:

<u>Overview</u>

Defendant Russell Hibbert, along with his co-conspirators, participated in and executed a complex, multifaceted telemarketing scheme. Defendant Hibbert agreed to submit and did, in fact, submit merchant account applications for members of the Telemarketing Enterprise knowing that one and more merchant account applications contained false and misleading information. Defendant Hibbert did so agree knowing that merchant accounts opened and supplied to the Telemarketing Enterprise would, in turn, be used by the Telemarketing Enterprise to process credit card payments arising from telemarketing sales of fictitious business

opportunities.   The stipulated loss amount associated with Defendant Hibbert's role in the offense, and specific to settled transactions processed through fraudulently obtained merchant accounts held in the name of Quick Online Biz, Biz Management Pros and Smart Business Pros, was not less than $1,500,000 and not more than $3,500,000.   At sentencing, consistent with the agreement of the parties and reflective of his role in the scheme, the Court ordered Defendant Hibbert to pay restitution to specified victims in the total amount of $1,846,167.95.   Contrary to the parties Guilty Plea Agreement, the accepted Presentence Report and the Criminal Judgment, Defendant Hibbert now seeks additional post-judgment "offsets" to his restitution obligation beyond what was agreed to and beyond what he is entitled to.[1]   The Government respectfully submits that the defendant's *pro se* motion should be denied.

## Procedural History

On November 7, 2017, the Court adopted and approved the Guilty Plea Agreement submitted and filed by the parties (Doc. # 404).  As to restitution, the Plea Agreement states: "The defendant agrees to provide full restitution to all victims of all charges in the indictment." (Doc. # 405, p.13).  As to forfeiture, the Guilty Plea Agreement states:

> The defendant agrees, pursuant to the guilty plea to Count 1, to forfeit to the United States all property subject to forfeiture under the applicable statute(s) . . .

---

[1] A restitution payment received by the Clerk of the Court in this matter does not automatically trigger an offset that reduces Defendant Hibbert's restitution obligation.   Consistent with submissions filed with the Court by the Government in this case, different defendants were ordered to pay different restitution amounts and some defendants were not obligated to make restitution payments to certain victims.   For instance, the Court did not order Defendant Hibbert to pay restitution to victims of the Telemarketing Enterprise who were victimized prior to his joining the conspiracy.   The Court also did not order Defendant Hibbert to pay restitution to victims of the Telemarketing Enterprise who were victimized through entities that did not utilize merchant accounts obtained through Defendant Hibbert's company.   In contrast to Defendant Hibbert, the Court ordered Defendant Michael McNeill to pay restitution to all victims of the Telemarketing Enterprise in an amount totaling $28,210,045.71 (Doc. # 767).   The Clerk of the Court is administering the restitution payments in a manner that is consistent with the applicable joint and several obligations reflected in the filings underlying the Court's restitution orders in the case.   For example, Defendant Anthony Swiantek has made restitution payments totaling $1,000,000.00.   (See docket entries on 3/7/18, and 3/8/18).   Said payments reduced the amount of restitution owed to certain victims by certain defendants, including those victims that Defendant Hibbert is obligated to pay.

> Pursuant to Federal Rule of Criminal Procedure 32.2(4), the defendant consents to the Court's preliminary order of forfeiture becoming final as to him on the date the Court enters its preliminary order of forfeiture.
>
> The defendant also agrees to forfeit all of the defendant's interest in all items seized by law enforcement officials during the course of their investigation. The defendant admits that all United States currency, weapons, property and assets seized by law enforcement officials during their investigation constitute the proceeds of the defendant's illegal activity, were commingled with illegal proceeds or were used to facilitate the illegal activity . . . The defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

(Doc. # 405, pp. 13-14).

On February 26, 2018, as moved by the Government, the Court entered its Preliminary Order of Forfeiture that identified and ordered specific property forfeited to the United States. (Doc. # 638).

On March 6, 2018, the Court received a Final Presentence Report as to the defendant. (Doc. # 775). At sentencing, and without objection, the Court accepted the Final Presentence Report, including those provisions of the report that detailed the defendant's restitution obligation. (Doc. # 806).

The Court's March 8, 2018 Judgment addressed both restitution and forfeiture. (Doc. # 814). As to restitution, the Court ordered the defendant to pay $1,846,167.95 and specified that "the defendant shall make restitution in the total amount of $1,846,167.95 to the Non-Public Victims listed in Attachment A to docket entry #621 and as further stated in the Supplemental Restitution Questionnaire, entry #741." (Doc. # 814, p. 7). The Judgment further specified "[t]his obligation is joint and several with other defendants in Docket Number 4:16CR00466 JAR as set forth in the Restitution Questionnaire and Supplemental Report to Restitution Questionnaire, docket entries #621 & #741, meaning that no further payments shall be required after the sum of the amounts actually paid by all defendants has fully covered the compensable

injuries.  Payments of restitution shall be made to the Clerk of the Court for transfer to the victims." (Doc. # 814, p. 8).  As to forfeiture, the Judgment set forth that:  "The defendant shall forfeit the defendant's interest in the following property to the United States:  Under 21 U.S.C. Section 853, the defendant agreed to forfeit all rights, title and interests in all assets, which are subject to forfeiture, previously identified in the Preliminary Order of Forfeiture granted on February 26, 2018."  (Doc. # 814, p. 8).

### Defendant's Motion

The total loss to all victims in this matter exceeds $25,000,000.  To date, per the Clerk of the Court, the defendant has paid approximately $75 toward restitution.[2]  As agreed by the parties, the defendant is not responsible for restitution for each victim of the overarching conspiracy.  Instead, he is responsible for restitution to those victims specifically identified in the filings noted above.  Yet, the defendant now seeks offsets as if he was obligated to pay each and every victim and expects a credit any time any victim in the case receives restitution from any other defendant.  While his restitution obligation is joint and several with certain other defendants, there are scores of victims that the defendant is not obligated to pay restitution to and he should not expect an offset when payments are made to those victims.  The Clerk of the Court is administering restitution payments consistent with the agreement of the parties and consistent with the Judgment entered on March 8, 2018.  Accordingly, as agreed by the parties, there will necessarily be instances when other defendants make restitution payments and Defendant Hibbert will not receive a credit or an offset to his restitution obligation.

The defendant's demand for offsets arising from criminal forfeiture proceedings is also without merit.  As agreed by the parties and as ordered by the Court, the defendant has no rights,

---

[2] To date, per the Clerk of the Court, the defendant's total restitution obligation has been reduced by approximately $196,285 as a result of restitution payments made by other defendants.

title or interest in any assets subject to criminal forfeiture.[3]  The Government has requested that the discretionary authority of "restoration" be utilized to benefit the victims in this matter who, undoubtedly, will never be made whole.[4]  The defendant, however, has no say in this restoration process.[5]

The Mandatory Victims Restitution Act (MVRA), Title 18, United States Code, Sections 3663A-3664, requires that, where the statute is applicable, a court order the defendant to pay restitution to the victims of the offense and that restitution must be for the "full amount" of a victim's loss.  *United States v. Rea*, 169 F.3d 1111, 1114 (8th Cir. 1999).  The purpose of any restitution award is to restore victims to their original state of well-being.  *United States v. Statman*, 604 F.3d 529, 538 (8th Cir. 2010).  Co-defendants may be proportionally or jointly and severally liable for restitution when they are all culpable.  *United States v. Moten*, 551 F.3d 763, 768 (8th Cir. 2008).[6]  The defendant did not challenge the restitution order at sentencing.  The defendant does not now assert that the victims he is obligated to pay are now whole or are receiving amounts they are not entitled to receive.  (The MVRA does not allow victims to obtain

---

[3] The specific assets forfeited in this case were not assets seized from, or surrendered by, Defendant Hibbert.

[4] In this case, the United States Attorney's Office for the Eastern District of Missouri submitted a restoration request to the Department of Justice, Criminal Division, Money Laundering and Asset Recovery Section (MLARS) on March 11, 2019.  As of the date of this response, MLARS has not granted the request.  While the Government fully anticipates that its restoration request will ultimately be granted, until such request is granted by MLARS, no forfeited funds may be restored to the victims.

[5] Defendant Hibbert mistakenly asserts that the Court has the authority to deduct the value of forfeited assets from Defendant's restitution balance – instead, this authority resides solely with the Department of Justice.  See 21 U.S.C. 853(i)(1) (authorizing the Attorney General to restore forfeited property to victims); Attorney General Order No. 2088-97 (June 14, 1997) (delegating authority to the Chief of the Asset Forfeiture and Money Laundering Section, Department of Justice ).  This "restoration" authority, enabling the Department of Justice to permit direct transfer of forfeited funds to the Clerk of Court for payment of a criminal restitution order, is entirely within the discretion of the Department of Justice.  See *United States v. Pescatore*, 637 F.3d 128,137 (2d Cir. 2011) (forfeiture and restitution are separate remedies with different purposes; defendant was not entitled to have the Government apply $2.5 million in forfeited funds to a $3 million restitution order); *United States v. Sanjar*, 876 F.3d 725 (5th Cir. 2017) (holding that a district court has no authority to offset forfeiture and restitution and stating that Congress left it to the Attorney General to decide whether to apply forfeited funds to restitution); *United States v. Aladade*, 204 F.3d 536, 540 (4th Cir. 2000) (district court has no discretion under the MVRA to reduce a restitution award by the amount of the assets seized from defendant in an administrative forfeiture proceeding).

[6] The Government's Supplement Report to Restitution Questionnaire provided the defendant information in advance of sentencing regarding other defendants involved in total loss noting "who is joint and several and with whom." (Doc. # 741).

double recovery or a windfall through restitution.  *United States v. Frazier*, 651 F. 3d 899, 904 (8th Cir. 2011)).  Instead, though his victims have received only a small fraction of what they are owed, the defendant seeks offsets to his restitution balance.  The Government respectfully submits that the defendant is not entitled to any of the offsets he seeks (at least at this time) and his motion speaks more to an effort to avoid paying what *he* owes to those victims impacted by his crime.

### Conclusion

WHEREFORE, because the Clerk of the Court is administering restitution payments consistent with the agreement of the parties and the Judgments and Orders of this Court, and because the defendant has no right, interest or title to the property that has been forfeited to the United States, the defendant's motion to "fully offset" his restitution balance is without merit and should be denied.

Dated: March 29, 2019

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

*/s/ Charles S. Birmingham*
CHARLES S. BIRMINGHAM, #47134MO
Assistant United States Attorney
111 South 10th Street, Suite 20.333
Saint Louis, Missouri 63102

*/s/ Kyle T. Bateman*
KYLE T. BATEMAN, #996646DC
Assistant United States Attorney
111 South 10th Street, Suite 20.333
Saint Louis, Missouri 63102

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 29, 2019, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Charles S. Birmingham*
CHARLES S. BIRMINGHAM, #47134MO
Assistant United States Attorney